CLARENCE C. HOBDY, JR. and MARGARET G. HOBDY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hobdy v. Commissioner
Docket No. 9525-82.
United States Tax Court
T.C. Memo 1985-414; 1985 Tax Ct. Memo LEXIS 226; 50 T.C.M. (CCH) 735; T.C.M. (RIA) 85414; August 12, 1985. Clarence C. Hobdy, Jr. and Margaret G. Hobdy, pro se. Linda J. Wise, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1978 in the amount of $2,324 and an addition to tax under section 6653(a) [1] in the amount of $116.20. In his answer, respondent made an affirmative allegation of a claimed increase in deficiency whereby the deficiency claimed by respondent was $2,811. Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for our decision (1) whether petitioners are entitled to deduct expenses for maintaining an office in their Virginia home for the first part of the year 1978 and in their Florida home for the latter part of that year; (2) whether petitioners are entitled to deduct all or any part of claimed expenses incurred on a trip to Hawaii as business *228 expenses or expenses for the production of income; (3) whether petitioners are entitled to deduct expenses for a trip of one of them to Ft. Lauderdale, Florida, in August 1978 as business expenses or expenses for the production of income; and (4) whether petitioners are liable for an addition to tax for negligence or intentional disregard of rules and regulations under section 6653(a). FINDINGS OF FACT Petitioners, Clarence C. Hobdy, Jr., and Margaret G. Hobdy, husband and wife, who resided in Mobile, Alabama, at the time of the filing of their petition in this case, filed a joint Federal income tax return for the calendar year 1978. Clarence C. Hobdy, Jr. (petitioner) was a captain in the United States Coast Guard prior to the year here involved and until his retirement on December 15, 1978. During the period January 1, 1978, to July 11, 1978, petitioners lived in a nine-room house in Alexandria, Virginia, while Captain Hobdy performed services for the Coast Guard. Before his retirement, petitioner was deputy chief of operations of the Coast Guard in Washington, D.C. His duties in this position consisted of supervising any of the operations of the Coast Guard that fell within *229 the purview of the operations office, such as search and rescue, law enforcement, intelligence, ocean operations, fisheries, Fisheries Act enforcement, ordnance and gunnery, and military readiness. Petitioner was furnished an office by the Coast Guard in which to perform his work. Petitioners used one of the spare bedrooms of their Alexandria home as a home-office. The expenses attributable to this room for the time it was used in 1978 were $449.62. Petitioner used this office to perform certain of his work in connection with the Coast Guard, specifically to prepare fitness reports on subordinate officers, and also to conduct activities with respect to petitioner's real property, stock investments, bond investments, gold bullion and oil lease investments, his military professional writing, to prepare and maintain income tax records and to file certain personal papers such as birth and marriage certificates. Petitioners' residence from October 24, 1978, through December 31, 1978, was a six-room house in Ft. Lauderdale, Florida. Petitioners used one of the rooms in this house as a home-office. Their expenses attributable to the use of this room during 1978 were $2,594.38. Petitioners *230 used their Florida home-office to conduct certain real estate activities and for their investment activities in stocks, bonds, gold bullion and oil leases, and to maintain income tax records and certain personal records. During the year 1978 and for some years prior and subsequent thereto, petitioner wrote certain military articles. Some of these articles were published in military magazines. Petitioner has written a total of 20 articles and has been paid for two of these articles. The first article for which petitioner was paid was in a year prior to the year here in issue. This article was published in the Coast Guard Academy Bulletin and petitioner received $50 for the article from that publication. The only other amount petitioner has received as payment for any of his writings was $50 received in either 1980 or 1981.Petitioner, during the year 1978, rented to a tenant a house in Mobile which had in previous years been used by petitioners as their home. Petitioner had the rental of the house managed by a real estate broker, but he kept certain records with respect to the rental of this house in his home-office in Alexandria and later in Ft. Lauderdale. In addition, during *231 1978 and for some years prior thereto, petitioner purchased properties at tax sales, primarily in Mobile County, Alabama. Petitioner kept the records with respect to these properties in his home-offices during 1978. During the first 3 years after properties were purchased by petitioner at tax sales the delinquent previous owner could redeem the property by paying the back due taxes, sales expenses and interest. After this period the delinquent previous owner could reacquire the property up through the tenth year, but the method of reacquisition was more complicated and absent an agreement with the person who had purchased the property at the tax sale usually required a court proceeding. The only dispositions ever made by petitioner of any properties he acquired through tax sales were by redemption by the delinquent previous owner. In early 1978 petitioner decided to retire from the Coast Guard. Petitioner actually retired effective December 15, 1978, but was on terminal leave from the Coast Guard from the time he left his duty station in Washington, D.C., in July 1978 until his retirement date in December. On May 11, 1978, petitioner wrote a letter, addressed "Dear Doc," in *232 which he stated that he would be leaving the Coast Guard in midsummer and further stated: For the next two months I will be hitting the job market in earnest, attempting to find an operations or general manager position. If unsuccessful initially, Margaret and I will leave in mid-July for a month's vacation in Hawaii. After that I will return to Mobile in late August and resume the job hunt. Under date of July 7, 1978, petitioner wrote letters to numerous individuals, including letters to friends, in Hawaii which, except for the address, were identical. The letters requested that the individuals furnish petitioner with any leads they had with respect to positions in operations or general management within the business community. The second-to-last paragraph of each letter recited that petitioner and his wife would be in Honolulu in late July and early August, staying for a month in the Hale Koa Hotel. The letter further stated that petitioner would give the addressee of the letter a call the first of August but, if the individual had a "hot lead" for him, to leave a message at the hotel any time after July 15. The sentence following was: "We are going to combine a Hawaiian *233 vacation with a job hunting effort." On July 12, 1978, shortly after conclusion of his active work with the Coast Guard, petitioner flew to Hollywood, Florida, for an interview with ACR Electronics, Inc. (ACR), with respect to a position with that firm. While he was in Hollywood, Florida, petitioner received an offer from ACR of a position with a starting salary of $32,000 and an anticipated commencement of employment shortly after Labor Day. After his interview with ACR representatives in Ft. Lauderdale, Florida, on July 12, a letter was addressed to petitioner on July 20 from the vice president of that corporation stating, insofar as here pertinent, as follows: This letter is to confirm our offer of a starting salary of $32,000, with your arrival being anticipated shortly after Labor Day. Should you have any further questions, please give me a call, and if not, by all means have a great holiday in Hawaii. On July 14, 1978, petitioner and his wife departed for Hawaii. Petitioner flew on a military aircraft from Washington, D.C., to Hawaii at no expense to himself. Mrs. Hobdy paid commercial fare to San Francisco and flew from San Francisco to Hawaii on military aircraft *234 at no expense to herself or petitioner. On July 23, 1978, while in Hawaii, petitioner met for brunch with a realtor to discuss real property in Hawaii and a possible aviation job. On July 17, he visited the unemployment office in Hawaii and on July 18 visited the Coast Guard legal offce to discuss umemployment. On July 27 petitioner took the Windjammer dinner cruise. Petitioner discussed the possibility of being a relief captain on the Windjammer with the operator of the boat. On August 4, petitioner had lunch with a person by the name of Mary Howe and discussed job prospects in Hawaii. On August 7, he had an interview with a representative of Sun Source Solar Systems. On July 31, while in Hawaii, petitioner discussed with a realtor the possibility of purchasing a condominium and received a prospectus. On August 3, petitioner placed $1,000 in escrow as a backup purchase of a condominium in Kauai. All the condominiums were under contract, but petitioner placed the deposit in case someone who had contracted to buy one of the condominiums defaulted on his contract. Petitioners returned from Hawaii on August 15 or 16, 1978. On August 22, 1978, petitioner left Alexandria, Virginia, *235 by automobile and drove to Mobile, Alabama, and on to Ft. Lauderdale, Florida. He left the automobile he was driving in Ft. Lauderdale and flew back to Virginia on August 27, 1978. Three days later, on August 30, 1978, petitioner drove a second automobile that he owned to Ft. Lauderdale and took up residence in Ft. Lauderdale. Petitioner began working for ACR on September 5. Mrs. Hobdy arrived in Ft. Lauderdale and took up residence there on September 9, 1978. Petitioner spent approximately 3 days in Mobile in late August inspecting the house he rented there and some of the properties he had bought in tax sales and taking care of some legal matters relative to these properties. Petitioners purchased a house near Ft. Lauderdale, Florida. Petitioners obtained title to the house on October 24, 1978. Petitioners lived in rented quarters in Ft. Lauderdale until the closing on the house on October 24, 1978. They then moved into the house they had bought and used it as their personal residence. Petitioners, with their 1978 Federal income tax return, filed a Form 4831, Rental Income, in which they showed rents received of $5,351.64, expenses before depreciation of $16,328.16, depreciation *236 of $4,267.24, making total deductions of $20,595.40 and leaving a net loss from rental of $15,243.76. The income otherwise reported on their return was reduced by this net loss. The rentals received as reported on the return consisted entirely of the amounts received from rental of the house and adjacent lot which had been petitioner's former home in Mobile, Alabama. In addition, on the Form 4831 petitioners showed 8 parcels held under tax lien in Mobile County, Alabama, 6 parcels held under State tax deeds in Mobile County, Alabama, 1 parcel of a one-fourth interest in unimproved land in San Diego, California, and a deposit on a condominium in Kauai, Hawaii. Among the items deducted by petitioners as expenses on the Form 4831 were traveling and automobile expenses of $1,421.19 in connection with the rental property in Mobile and $3,003.76 in connection with the deposit on the condominium in Kauai, Hawaii. Also among the expenses listed in connection with the rental property in Mobile were office-in-home expenses of $2,998.09. This amount was composed of $449.62 of home-office expenses in connection with petitioners' home in Alexandria, Virginia, and $2,548.47 in connection with *237 petitioners' home in Ft. Lauderdale, Florida. Respondent in his notice of deficiency disallowed the travel expense deduction totaling $4,424.95 claimed on the Form 4831 and the claimed office-in-home expense deduction of $2,998.09. [2] At the trial petitioner claimed that the trip to Hawaii should be allowed as a job-hunting expenditure as well as a business expense in connection with his rental property business. Although this claim for these expenses was not raised in the petition, respondent did not object to petitioner's raising the issue at trial and it is therefore properly before us. *238 OPINION Section 280A(a) provides, with certain exceptions, that no deduction otherwise allowable shall be allowed to a taxpayer who is an individual with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. Section 280A(c) [3] provides exceptions to the provisions of subsection (a) for an amount applicable to a portion of the dwelling unit which is used exclusively on a regular basis as the taxpayer's principal place of business, or as a place of business which is used by patients, clients or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or is a separate structure not attached to the dwelling unit if that structure is used in connection with the taxpayer's trade or business. *239 There is no contention in this case that petitioner's home-offices were used by patients, clients or customers in meeting or dealing with petitioner and the evidence clearly shows that the home-offices were part of petitioner's residence and not a separate structure. Therefore, in order for petitioner to be entitled to the deduction claimed as home-office expenses, he must show that the rooms used as home-offices were used exclusively on a regular basis as his principal place of business. The evidence here is clear that petitioner's principal place of business as a capitain in the Coast Guard was the office supplied to him by the Coast Guard. Therefore, any use made of the home-office in petitioner's Alexandria residence was not the principal place of business of petitioner in his business of being a captain in the Coast Guard. Petitioner contends that he operated a number of businesses from his office in his home and that, as respondent now recognizes, an office may be used for more than one business. Respondent takes the position that the only activity other than being an employee of the Coast Guard and ACR in which petitioner was engaged that could be considered a trade or *240 business was the rental of the house in Mobile, Alabama. It is respondent's position that the home-offices were not used exclusively for this business. Petitioner contends that he was engaged in an overall real estate business and that the rental property in Mobile was only one portion of this business. While there is little in the record to support petitioner's contention that his investments in properties purchased at tax sales was a business as distinguished from an investment activity for the production of income, it is unnecessary to resolve this difference between the parties to conclude that petitioner's home-offices were not used exclusively as the principal place of a business of petitioner. Petitioner stated that personal items were kept in the file cabinet in the home-office, that he kept income tax material in this office and prepared income tax returns in it, and that he used the office in connection with his investments in stocks, gold bullion and oil leases. Clearly, none of these latter activities were a trade or business carried on by petitioner. As pointed out in , the legislative history *241 of section 280A is clear that a taxpayer is no longer entitled to a home-office expense deduction for an activity engaged in for the production of income within the meaning of section 212 that does not meet the requirements of a trade or business under section 162. In , much more extensive activities in connection with the purchase and sale of stock and other assets than the type of activities conducted by petitioner in this case were held not to constitute a trade or business. Since the evidence here is clear that petitioner's home-offices were not used exclusively for his real estate trade or business, whether that trade or business be considered to encompass only the rental of the house in Mobile or to also include his purchases of property at tax sales, it is unnecessary for us to discuss the other requirements which respondent contends petitioner did not meet in order to be entitled to a deduction for home-office expense. We therefore sustain respondent's disallowance of petitioners' claimed home-office expense deduction. From this record it is clear that petitioner has totally failed to show any connection between his trip *242 to Ft. Lauderdale, Florida, in August 1978 and any trade or business in which he might have been engaged. [4] Petitioner claims the expenses of the trip to Ft. Lauderdale were in connection with his real estate business to purchase real property. It is not completely clear from the record whether petitioner purchased or even looked at any property in Ft. Lauderdale, but the inference is that petitioner located and entered into an agreement to purchase the house near Ft. Lauderdale which became the personal residence of petitioners after the closing of the sale of October 24, 1978. The purchase of a personal residence is a personal expense and costs in connection therewith are not deductible as business expenses or expenses for the production of income within the meaning of section 212. The inference we draw, that the property to which petitioner is referring in connection with his Ft. Lauderdale trip is the house which became petitioner's personal residence, is from a statement of petitioner's at trial. Petitioner stated that the house was more expensive than he would have purchased as a residence, but that it was purchased with the idea of living in it while in the Ft. Lauderdale *243 area, and then keeping the house as an investment. However, based on this record, the only activity we can infer that petitioner conducted in Ft. Lauderdale in August 1978 was in connection with the purchase of a personal residence. We therefore sustain respondent's disallowance of the claimed travel expense deductions insofar as they cover expenses of petitioner's trip to Ft. Lauderdale. [5]
*244 It is clear from this record that the primary purpose of petitioners' trip to Hawaii from July 15 to August 15, 1978, was for a personal vacation. Petitioner had written a friend with respect to leaving the Coast Guard and looking for other employment but in any event planning a month's vacation in Hawaii in July and August. In letters written to friends in Hawaii petitioner referred to combining a Wawaiian vacation with job-hunting. Also, this record does not support any basis for Mrs. Hobdy going to Hawaii aside from a vacation trip. Petitioner claims that his wife accompanied him on the trip to Hawaii because a prospective employer might wish to interview his wife. He also testified that generally, although not always, both of them looked at properties that they were considering buying. The record shows that in fact the few interviews petitioner had did not include his wife and certainly no showing has been made here that Mrs. Hobdy provided any substantial services directly related to petitioner's job interviews. As pointed out in , "A wife's travel expenses are not deductible unless it is shown *245 that she provided substantial services directly and primarily related to the carrying on of her husband's business." No showing has been made of any possible business purpose of Mrs. Hobdy's trip to Hawaii. Petitioner did have some interviews with respect to employment in Hawaii, but the record does not show how much time was spent on these interviews or whether petitioner was seriously considering any of the positions that were the subject of these interviews. The intimation from the record is that petitioner was already committed, at least tentatively, to accept the position in Ft. Lauderdale by the time the actually embarked on the trip to Hawaii. The clear intimation from the record is that having sent letters to so many friends in Hawaii in the early part of July, before having accepted the position in Ft. Lauderdale, he went forward with some of the interviews but did not have a serious interest in any of the positions at that time. This fact coupled with the fact that the time spent on the interviews was minimal, insofar as this record shows, leads us to conclude that the portion of the expenses which could be allocated to any job-hunting activities would *246 be minimal at best and petitioner has failed to prove that any of the expenses are properly applicable to this activity. The record does not substantiate petitioner's claim that he was seriously engaged in a job-hunting activity in Hawaii. Likewise, this record fails to show that any of the positions which petitioner discussed in Hawaii were in the same line of business as his activities as a captain in the Coast Guard. Expenses of investigating and looking for a new business are not deductible as oridinary and necessary expenses incurred in carrying on a trade or business. . Neither are such expenses deductible under section 212 as expenses incurred in the production or collection of income or in the management, conservation or maintenance of property held for the production of income. As stated in -- There is a basic distinction between allowing deductions for the expense of producing or collecting income, in which one has an existent interest or right, and expenses incurred in an attempt to obtain income by the creation of some new interest. Certainly the *247 activities of petitioner with respect to the possible purchase of a condominium in Hawaii were not activities with respect to a trade or business. This is true, even if petitioners were to be considered as engaged in a real estate business aside from the house they rented in Mobile. The consideration of the possible purchase of a condominium in Hawaii would not fall within the ambit of petitioner's activities of purchasing property at tax sales. This record does not show any business reason for petitioner placing a deposit, which was later returned, toward a condominium in Hawaii. As pointed out in , traveling costs incurred in an endeavor to acquire a business which might in the future prove productive of income cannot be regarded as a present business expense or expense of the production or collection of income and therefore are not deductible.We sustain respondent's disallowance of petitioners' claimed deduction for travel expenses to Hawaii. The final issue is whether respondent properly determined that petitioners are liable for the addition to tax under section 6653(a) for negligence or intentional disregard of rules *248 and regulations. Where respondent has determined that a portion of the deficiencies determined against a taxpayer is due to negligence or intentional disregard of rules and regulations, the burden is upon the taxpayer to prove that this determination is erroneous. . Petitioner in this case has failed to show any error in respondent's determination of the addition to tax. In fact there are clear indications of negligence or intentional disregard of rules and regulations on the part of petitioner in this record. One such indication is petitioner's claiming as deductible expenses in connection with a trip to purchase a private residence. Also, the claiming by petitioners of their total expenses of a Hawaiian trip which was primarily, if not totally, a vacation is indicative of negligence. Based on this record, we sustain respondent's determination of the addition to tax under section 6653(a). [6]
*249 Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue.↩
2. Although respondent disallowed the total claimed travel expense deduction of $4,424.95, at the trial respondent's counsel conceded that the portion of the $1,421.19 relating to petitioner's trip to Mobile was properly deductible as an expense in connection with petitioner's rental property. Included in the amount respondent conceded was the $77 airfare from Ft. Lauderdale, Florida, to Washington, D.C., since, as counsel for respondent stated, airfare from Mobile to Washington, D.C., would have been as much as airfare from Ft. Lauderdale. It is only the trip from Mobile to Ft. Lauderdale and the days spent in Ft. Lauderdale that are still in issue here. The $3,003.76 relates to the deduction of petitioners' claimed expenses in Hawaii. There is no breakdown in the record as to the portion of the expenses of the Hawaiian trip which were for Mrs. Hobdy and the portion for petitioner.↩
3. Sec. 280A(c)(1) provides as follows: (c) Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use. (1) Certain business use.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis-- (A) as the taxpayer's principal place of business, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business. In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer.↩
4. Petitioner does not claim any deduction in connection with the Ft. Lauderdale trip as a moving expense. The parties have stipulated the moving expense deduction to which petitioner is entitled in 1978 and agreed that the amount so stipulated is the total moving expense which petitioner is entitled to deduct. Respondent in his brief states that the amount agreed to be deductible for moving expenses is the maximum amount allowable for moving expenses. Whether this statement is correct is immaterial since the amount petitioner is claiming for the August 1978 trip to Ft. Lauderdale is in addition to the agreed amount of moving expenses which was one of the items settled by the parties. ↩
5. The parties have agreed to the portion of the claimed travel expenses allocable to the Mobile part of petitioner's August 1978 trip to Mobile and Ft. Lauderdale and have agreed that the amount of those expenses is deductible, including airfare returning from Ft. Lauderdale to Washington, D.C.↩
6. We have not discussed certain issues argued by petitioner on brief which have either been disposed of by settlement of the parties stipulated into the record or not raised in the petition. Petitioner argues that respondent harassed him and therefore should be liable for damages to petitioners and for petitioners' attorneys' fees. Petitioner also argues that he is entitled to a casualty carryback loss from 1979 because of damage done to property he owned by a hurricane in that year. The first time petitioner mentioned any claim for damages or attorneys' fees was on brief. However, it should be pointed out that the petition in this case was filed in May 1982 prior to the February 28, 1983, date for commencement of a case for the provision of section 7430 to be applicable. Therefore, under no circumstances would petitioner be entitled to an award of cost or attorneys' fees as claimed.See , affd. . At the trial petitioner mentioned the casualty loss in 1979 and was specifically informed by the Court that the casualty loss had not been placed in issue in the petition and therefore was not in issue in the case.↩